**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jordan Hall,<br><br>Plaintiff,<br><br>v.<br><br>Townsquare Media, Inc.,<br><br>Defendant. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jordan Hall ("Plaintiff"), by and through his undersigned counsel, for his Complaint against defendant Townsquare Media, Inc. ("Defendant") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq.

2. Plaintiff is a professional storm chaser and videographer. This action concerns two of his videos: footage of the destruction left by the tornado that struck Rolling Fork, Mississippi on March 24, 2023, and footage of a semi-truck overturned by severe storms on a highway in Baylor County, Texas in April 2025 (together, the "Videos").

3. Each time, within a day of the Video's first publication, Defendant copied a still frame from the Video, stored it on its own server, and displayed it as the featured image of an article about the very event the Video depicts, publishing that article across multiple of its radio station websites. Defendant never sought or obtained a license from Plaintiff.

## PARTIES

4. Plaintiff Jordan Hall is an individual who resides in Cleveland County, Oklahoma.

5. Upon information and belief, defendant Townsquare Media, Inc. is a Delaware corporation with a principal place of business at 4 Manhattanville Road, Suite 107, Purchase, in Westchester County, New York.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in New York.

8. Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claims occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Business

9. Plaintiff is a professional storm chaser, drone pilot, photographer, videographer, and multimedia journalist whose original works document some of the most significant weather and natural-disaster events throughout North America.

10. Through extensive field reporting and severe-weather coverage, Plaintiff has created a valuable portfolio of copyrighted photographs and audiovisual works depicting tornadoes, hurricanes, floods, wildfires, and other extreme-weather phenomena.

11. Storm chasing is dangerous, demanding, and expensive work. To capture footage of a tornado, Plaintiff must research and forecast severe weather, often days in advance, and continuously monitor radar, satellite, and forecast models to determine where a storm is likely to form and how it will move.

12. Plaintiff routinely spends long hours on the road, frequently driving hundreds of miles over the course of a single storm system, and must position himself close enough to a storm to capture usable footage while navigating flying debris, large hail, lightning, flooding, damaged roads, and rapidly changing conditions. This work places Plaintiff's life at risk.

13. Storm chasing also requires substantial investment in professional camera and stabilization equipment, aerial drone equipment, mounting and power systems, mobile data and communications equipment, a suitable vehicle and its repair and maintenance, fuel, and lodging, as well as significant post-production effort.

14. Footage of a tornado or its aftermath cannot be recreated or reshot. Its value lies in its having been captured at a specific place and moment, often at great personal risk, and that value is greatest in the period immediately following the event it depicts.

15. Plaintiff's work is recognized within the weather-media industry and is licensed for news reporting, documentary, editorial, and commercial purposes. Plaintiff derives substantial value from the ownership and authorized licensing of his copyrighted works and has invested considerable time, expertise, and resources in their creation.

16. The unauthorized reproduction and display of Plaintiff's works diminishes the value of Plaintiff's licensing market and undermines his ability to profit from his creative efforts.

**B. Plaintiff's Copyright Ownership**

17. On the night of March 24, 2023, a powerful tornado struck Rolling Fork, Mississippi and devastated much of the town. Plaintiff recorded footage of the aftermath.

18. On March 25, 2023, Plaintiff first published the video titled "HEARTBREAKING Rolling Fork MS Tornado Damage" ("Video #1") on YouTube, at

https://www.youtube.com/watch?v=lHDoHs-N5g8. A copy of a still image from Video #1 is attached hereto as part of Exhibit 1.

19. Video #1 was registered by the United States Copyright Office (the "USCO") under Registration No. PA 2-450-542, with an effective date of registration of December 11, 2023.

20. In April 2025, severe storms overturned a semi-truck on a highway in Baylor County, Texas. Plaintiff recorded footage of the scene.

21. On April 29, 2025, Plaintiff first published the video titled "Blue Springs, TX Tornado damage" ("Video #2") on Facebook, on the pages "Storm Chaser Jordan Hall" and "MyRadar Weather Radar," including at https://www.facebook.com/reel/672836758669160. A copy of a still image from Video #2 is attached hereto as part of Exhibit 1.

22. On May 4, 2025, Video #2 was registered by the USCO under Registration No. PA 2-543-952, within three months of its first publication.

23. Plaintiff is the author and sole owner of the copyright in each of the Videos.

24. In creating the Videos, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens, and camera and drone equipment used to capture the Videos and made each and every artistic determination necessary for the creation of the works.

25. The Videos are original, creative works in which Plaintiff owns protectable copyright interests.

26. Plaintiff created the Videos with the intention of them being used commercially and for the purpose of display and/or public distribution, including through licensing to media organizations.

**C. Defendant's Infringing Activity**

27. Defendant is a media company that owns and operates local radio stations throughout the United States, together with a website for each station that publishes news, weather, entertainment, and other content.

28. Defendant is a publicly traded company (NYSE: TSQ) that describes itself as "a community-focused digital and broadcast media and digital marketing solutions company." According to its most recent annual report on Form 10-K, as of March 9, 2026, Defendant owned and operated 340 radio stations in 74 local markets, together with a portfolio of more than 400 local news and entertainment websites and mobile apps.

29. Defendant's websites are central to how it makes money. Defendant generates revenue by selling advertising displayed to the audiences its websites attract, connecting local, regional, and national advertisers to consumers across its portfolio of websites and apps. According to its Form 10-K, Defendant's digital revenue was $236.0 million in 2025, comprising 55% of its total net revenue. Visual content such as photographs and video draws readers to Defendant's articles and, in turn, increases the advertising inventory Defendant can sell.

30. Defendant owns and operates, and is responsible for the content of, the websites at kpel965.com, 1079ishot.com, krocnews.com, 1023thebullfm.com, and newstalk1290.com (collectively, the "Websites").

31. The Websites are a key component of Defendant's commercial enterprise. The Websites are monetized in that they contain paid advertisements and solicit advertisers, promote Defendant's mobile applications and contests, and drive listeners to Defendant's radio broadcasts, and, upon information and belief, Defendant profits from these activities.

32. On or about March 25, 2023, the same day Plaintiff first published Video #1, Defendant published an article titled "Mississippi Tornadoes Kill 23 Overnight, Dozens Injured or

Still Missing" (the "Mississippi Article") on three of its Websites: kpel965.com, 1079ishot.com, and krocnews.com.

33. The featured image of the Mississippi Article is a still frame copied from Video #1, depicting destroyed vehicles amid the debris of demolished homes ("Infringing Image #1"). Defendant copied and stored Infringing Image #1 on its own server, at https://townsquare.media/site/34/files/2023/03/attachment-Untitled-design-2023-03-25T082307.782.jpg, and displayed it from that server on each of the three Websites.

34. Defendant credited Infringing Image #1 as a "Screengrab via @jordanhallwx, Twitter." Defendant therefore knew that the footage was Plaintiff's, and that it was taking a frame from Plaintiff's footage, when it copied and displayed Infringing Image #1 without seeking or obtaining a license.

35. On or about April 30, 2025, the day after Plaintiff first published Video #2, Defendant published an article titled "A Semi Truck Flipped Due to 100 MPH Winds in Seymour, Texas" (the "Texas Article," and together with the Mississippi Article, the "Articles") on two of its Websites: 1023thebullfm.com and newstalk1290.com.

36. The featured image of the Texas Article is a still frame copied from Video #2, depicting the overturned semi-truck on the highway ("Infringing Image #2," and together with Infringing Image #1, the "Infringing Images"). Defendant copied and stored Infringing Image #2 on its own server, at https://townsquare.media/site/174/files/2025/04/attachment-128.jpg, and displayed it from that server on each of the two Websites.

37. Defendant did not credit Plaintiff as the author of Infringing Image #2, and instead credited it to "Facebook/Canva," neither of which created Video #2 or holds any rights in it.

38. Upon information and belief, attributing footage captured by identifiable storm chasers to a social media platform and to "Canva," a graphic-design tool, is a routine practice on Defendant's station websites, and such credits do not identify the author or any licensor of the footage.

39. In addition to publishing the Articles, Defendant uploaded Infringing Image #1 to the Facebook pages of three of its stations, "KPEL News," "Hot 107.9," and "News-Talk 1340 KROC AM & 96.9 FM," in posts dated March 25, 2023 promoting the Mississippi Article, and uploaded Infringing Image #2 to the Facebook page of "102.3 The Bull" in a post dated April 30, 2025 promoting the Texas Article (collectively, the "Facebook Posts"). Upon information and belief, Defendant owns and operates each of those Facebook pages. Defendant displayed the Infringing Images at the following locations (each, an "Infringement," and collectively, the "Infringements"), numbered to correspond to the screengrabs in Exhibit 2:

Infringement #1 (Mississippi Article, kpel965.com):

https://kpel965.com/ixp/34/p/mississippi-tornado-kill-23/;

Infringement #2 (Mississippi Article, 1079ishot.com): https://1079ishot.com/mississippi-tornado-kill-23/;

Infringement #3 (Mississippi Article, krocnews.com): https://krocnews.com/mississippi-tornado-kill-23/;

Infringement #4 (Facebook Post, "KPEL News," March 25, 2023):

https://www.facebook.com/kpel965/posts/pfbid07AnkCLqafeV52BhwdiBG9kn7UydYPQ2FVvxWGWsSWRkPFNTKvAS6csdbNJMaQemCl;

Infringement #5 (Facebook Post, "Hot 107.9," March 25, 2023): https://www.facebook.com/1079ishot/posts/pfbid02UzruaeafpkShRLGwC5TYXpJwQoczNuQaXKkYF3zyhraSY3MSPwT4btkeGyc6hvqZl;

Infringement #6 (Facebook Post, "News-Talk 1340 KROC AM & 96.9 FM," March 25, 2023): https://www.facebook.com/KROCNews/posts/pfbid02mg2ThUWmTyJt3YgjYo36rYbjoEwtUW1MvCscMraw6c7Xw6DTWhfmC2TjvZi7SaUFl;

Infringement #7 (Texas Article, 1023thebullfm.com): https://1023thebullfm.com/semi-truck-flipped-100-mph-winds-seymour-texas/;

Infringement #8 (Texas Article, newstalk1290.com): https://newstalk1290.com/ixp/174/p/semi-truck-flipped-100-mph-winds-seymour-texas/; and

Infringement #9 (Facebook Post, "102.3 The Bull," April 30, 2025): https://www.facebook.com/1023TheBullFM/posts/pfbid01CV4kvDLeUMZnvgEj5M9JMbvDkfHj1itxNmi4FPK1DgR8gnnLy2oNUUXVEyA8maWl.

40. Defendant did not display either of the Infringing Images by linking to or embedding any post.

41. Defendant did not obtain the Infringing Images through any embedding feature of a social media or video-hosting platform. To the extent such platforms' terms of service permit third parties to display content at all, they permit display only through the platform's own embedded player, and do not authorize a third party to copy frames from a video, store them on its own server, and display them outside the platform.

42. Each still frame is a copy of a protected portion of the respective Video. Defendant selected frames that captured the very events the Articles reported on, and it used them for the same purpose for which Plaintiff creates and licenses his footage: to show its audience those events. The Copyright Act expressly grants the owner of the copyright in an audiovisual work the exclusive right to display "the individual images" of that work publicly. 17 U.S.C. § 106(5).

43. Copies of screengrabs of the Articles on each of the Websites and of each of the Facebook Posts, identifying the date of each Article and Facebook Post and the specific URLs, are attached hereto as Exhibit 2.

44. The Infringements are copies of portions of the Videos that were copied and displayed by Defendant on the Websites without license or permission, thereby infringing on Plaintiff's copyrights in and to the Videos.

45. Each of the Infringements includes a URL ("Uniform Resource Locator") for a fixed tangible medium of expression that was sufficiently permanent or stable to permit it to be communicated for a period of more than a transitory duration and therefore constitutes a specific infringement.

46. Plaintiff did not discover the infringement of Video #1 earlier than December 17, 2025, or the infringement of Video #2 earlier than December 16, 2025.

47. On February 26, 2026, Plaintiff, through counsel, notified Defendant's counsel in writing of the Infringements. The Infringing Images have since been removed from the Websites and the Facebook Posts, although the Facebook Posts themselves remain posted.

48. To date, Defendant has not compensated Plaintiff for its use of the Videos.

49. Upon information and belief, Defendant is a sophisticated media company that owns or operates a large portfolio of radio stations, websites, and social media accounts, and has advanced operational expertise in an industry where copyright is prevalent.

50. Upon information and belief, Defendant's staff have significant experience in copyright matters due to the company's background as a large media company and are familiar with journalistic practices, including the need to ensure that images and videos used on Defendant's websites have been properly licensed.

51. Defendant understands the value of copyright and the necessity of licensing. In its annual report, Defendant states that it "own[s] or ha[s] the rights to copyrights that protect the content of [its] products" and that it "pay[s] royalties to song composers and publishers through four performing rights organizations."

52. The Terms of Use governing Defendant's websites declare that "Townsquare owns and retains all proprietary rights in the Websites" and provide that visitors "may not copy, modify, publish, transmit, distribute, perform, display, or sell" that content. Defendant thus demands from others the very respect for copyright that it denied Plaintiff.

53. Defendant's unlicensed use of photographs and videos on its websites is not an isolated occurrence. Since 2016, Defendant has been named as a defendant in at least fifty-one copyright infringement actions in this District arising from its unlicensed use of photographs and videos on websites it owns and operates, including:

> *Sadowski v. Townsquare Media, Inc.*, No. 1:16-cv-06408 (S.D.N.Y. filed Aug. 11, 2016);
>
> *Tabak v. Townsquare Media, Inc.*, No. 1:16-cv-07800 (S.D.N.Y. filed Oct. 6, 2016);
>
> *Parisienne v. Townsquare Media, Inc.*, No. 1:17-cv-00500 (S.D.N.Y. filed Jan. 23, 2017);

*Zlozower v. Townsquare Media, Inc.*, No. 1:17-cv-04161 (S.D.N.Y. filed June 3, 2017);

*Sands v. Townsquare Media, Inc.*, No. 1:17-cv-07259 (S.D.N.Y. filed Sept. 24, 2017);

*Mazza v. Townsquare Media, Inc.*, No. 1:18-cv-01992 (S.D.N.Y. filed Mar. 6, 2018);

*Fowler v. Townsquare Media, Inc.*, No. 1:18-cv-03794 (S.D.N.Y. filed Apr. 29, 2018);

*Zlozower v. Townsquare Media, Inc.*, No. 1:18-cv-06071 (S.D.N.Y. filed July 3, 2018);

*Global Interactive Media, Inc. v. Townsquare Media, Inc.*, No. 1:18-cv-06880 (S.D.N.Y. filed July 31, 2018);

*McGlynn v. Townsquare Media, Inc.*, No. 1:18-cv-08875 (S.D.N.Y. filed Sept. 27, 2018);

*Vollweiler v. Townsquare Media, Inc.*, No. 1:18-cv-10274 (S.D.N.Y. filed Nov. 5, 2018);

*McDermott v. Townsquare Media, Inc.*, No. 1:18-cv-11452 (S.D.N.Y. filed Dec. 7, 2018);

*Hermann v. Townsquare Media, Inc.*, No. 1:18-cv-12088 (S.D.N.Y. filed Dec. 20, 2018);

*Hirsch v. Townsquare Media, Inc.*, No. 1:19-cv-01444 (S.D.N.Y. filed Feb. 14, 2019);

*Chevrestt v. Townsquare Media, Inc.*, No. 1:19-cv-01993 (S.D.N.Y. filed Mar. 3, 2019);

*Zlozower v. Townsquare Media, Inc.*, No. 1:19-cv-03395 (S.D.N.Y. filed Apr. 16, 2019);

*Walsh v. Townsquare Media, Inc.*, No. 1:19-cv-04958 (S.D.N.Y. filed May 28, 2019);

*Malluk v. Townsquare Media, Inc.*, No. 1:19-cv-06461 (S.D.N.Y. filed July 11, 2019);

*Schiffman v. Townsquare Media, Inc.*, No. 1:19-cv-10467 (S.D.N.Y. filed Nov. 12, 2019);

*Soler v. Townsquare Media, Inc.*, No. 1:20-cv-01119 (S.D.N.Y. filed Feb. 9, 2020);

*Fedun v. Townsquare Media, Inc.*, No. 1:20-cv-02344 (S.D.N.Y. filed Mar. 17, 2020);

*Shihab v. Townsquare Media, Inc.*, No. 7:21-cv-00148 (S.D.N.Y. filed Jan. 7, 2021);

*Charming Beats LLC v. BuzzFeed, Inc.*, No. 1:22-cv-02202 (S.D.N.Y. filed Mar. 17, 2022) (naming Defendant as a co-defendant);

*Estate of Modu v. Townsquare Media, Inc.*, No. 1:22-cv-05311 (S.D.N.Y. filed June 23, 2022);

*Eclipse Sportswire v. Townsquare Media, Inc.*, No. 7:23-cv-06375 (S.D.N.Y. filed July 24, 2023);

*Lynk Media LLC v. Townsquare Media, Inc.*, No. 7:23-cv-09877 (S.D.N.Y. filed Nov. 8, 2023);

*Shook v. Townsquare Media, Inc.*, No. 1:24-cv-01764 (S.D.N.Y. filed Mar. 7, 2024);

*Borel v. Townsquare Media, Inc.*, No. 1:24-cv-02201 (S.D.N.Y. filed Mar. 24, 2024);

*Van Sise v. Townsquare Media, Inc.*, No. 7:24-cv-03836 (S.D.N.Y. filed May 17, 2024);

*Yang v. Townsquare Media, Inc.*, No. 1:24-cv-03841 (S.D.N.Y. filed May 17, 2024);

*Vila v. Townsquare Media, Inc.*, No. 7:24-cv-03845 (S.D.N.Y. filed May 17, 2024);

*Santiago v. Townsquare Media, Inc.*, No. 1:24-cv-03851 (S.D.N.Y. filed May 17, 2024);

*Neil Zlozower Photography Inc. v. Townsquare Media, Inc.*, No. 1:24-cv-03853 (S.D.N.Y. filed May 17, 2024);

*Stop Making Media, Inc. v. Townsquare Media, Inc.*, No. 1:24-cv-03855 (S.D.N.Y. filed May 17, 2024);

*Chosen Figure LLC v. Townsquare Media, Inc.*, No. 1:24-cv-03873 (S.D.N.Y. filed May 20, 2024);

*Hames v. Townsquare Media, Inc.*, No. 1:24-cv-03875 (S.D.N.Y. filed May 20, 2024);

*Nick Kozak Photography LLC v. Townsquare Media, Inc.*, No. 1:24-cv-03876 (S.D.N.Y. filed May 20, 2024);

*Ong v. Townsquare Media, Inc.*, No. 1:24-cv-03877 (S.D.N.Y. filed May 20, 2024);

*McDermott v. Townsquare Media, Inc.*, No. 1:24-cv-03883 (S.D.N.Y. filed May 20, 2024);

*Polaris Images Corp. v. Townsquare Media, Inc.*, No. 1:24-cv-04210 (S.D.N.Y. filed June 3, 2024);

*Richardson v. Townsquare Media, Inc.*, No. 1:24-cv-04217 (S.D.N.Y. filed June 3, 2024), aff'd in part, vacated in part, and remanded, 174 F.4th 299 (2d Cir. 2026);

*Lynk Media LLC v. Townsquare Media, Inc.*, No. 7:24-cv-04222 (S.D.N.Y. filed June 3, 2024);

*Malluk v. Townsquare Media, Inc.*, No. 1:24-cv-04321 (S.D.N.Y. filed June 6, 2024);

*Fish v. Townsquare Media, Inc.*, No. 1:24-cv-05610 (S.D.N.Y. filed July 25, 2024);

*Michael Grecco Productions, Inc. v. Townsquare Media, Inc.*, No. 7:24-cv-07584 (S.D.N.Y. filed Oct. 7, 2024);

*Martinka v. Townsquare Media, Inc.*, No. 7:24-cv-07797 (S.D.N.Y. filed Oct. 15, 2024);

*Moses v. Townsquare Media, Inc.*, No. 7:24-cv-07798 (S.D.N.Y. filed Oct. 15, 2024);

*Global Weather Productions LLC v. Townsquare Media, Inc.*, No. 7:25-cv-06059 (S.D.N.Y. filed July 23, 2025);

*Andy Ryan Photographer, LLC v. Townsquare Media, Inc.*, No. 1:25-cv-06542 (S.D.N.Y. filed Aug. 8, 2025);

*August Image, LLC v. Townsquare Media, Inc.*, No. 7:25-cv-09341 (S.D.N.Y. filed Nov. 7, 2025); and

*Miller v. Townsquare Media, Inc.*, No. 1:26-cv-06038 (S.D.N.Y. filed July 16, 2026).

54. Each of those actions put Defendant on notice that copying photographs and videos found online for use on its websites without a license infringes the copyrights in those works. Defendant nonetheless copied Video #2 after at least forty-seven of those actions had been filed against it.

55. Upon information and belief, Defendant takes an active and pervasive role in the content posted on the Websites, including, but not limited to, selecting, copying, editing, posting, and displaying images and videos, including still frames from Plaintiff's Videos.

56. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringements was apparent. Defendant cannot claim that it was not aware of the infringing activities, since such a claim would amount to only willful blindness to the Infringements on the part of Defendant.

57. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws, or at a minimum in reckless disregard of Plaintiff's rights.

58. Despite the many actions identified above, upon information and belief, Defendant has not adopted any effective practice for determining whether it holds a license before publishing photographs and video footage that its staff find online, and instead continues to treat such content as free for the taking.

59. Upon information and belief, Defendant had complete control over and actively reviewed and monitored the content posted on the Websites, and had the legal right and ability to control and limit the infringing activities on the Websites.

60. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringements, in that the Infringements increased traffic to the Websites and, in turn, caused Defendant to realize an increase in its advertising revenues.

61. Defendant's use of the Videos harmed the actual market for the Videos, and Defendant's use of the Videos, if widespread, would harm Plaintiff's potential market for the Videos.

62. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

## FIRST COUNT

**(Direct Copyright Infringement, 17 U.S.C. § 501 et seq.)**

63. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

64. The Videos are original, creative works in which Plaintiff owns valid copyrights.

65. The Videos are registered with the USCO, and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

66. Plaintiff has not granted Defendant a license or the right to use the Videos, or any portion thereof, in any manner, nor has Plaintiff assigned any of his exclusive rights in the copyrights to Defendant.

67. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. § 106, Defendant improperly and illegally reproduced and publicly displayed portions of the Videos, thereby violating Plaintiff's exclusive rights in his copyrights.

68. Defendant's reproduction and display of the Videos constitute willful copyright infringement.

69. Defendant's willfulness is shown by, among other things, its attribution of Video #1 to Plaintiff's own social media handle, which shows that it knew the footage was Plaintiff's; its attribution of Video #2 to "Facebook/Canva," which had no rights in it; its failure to seek a license from anyone; and its copying of Video #2 after at least forty-seven copyright infringement actions had been filed against it.

70. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for the infringement of Video #2 pursuant to 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement.

71. As a result of Defendant's infringement of Video #2, the Court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees pursuant to 17 U.S.C. § 505 from Defendant.

72. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyrights pursuant to 17 U.S.C. § 502.

## **JURY DEMAND**

73. Plaintiff hereby demands a trial of this action by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment finding that Defendant has infringed on Plaintiff's rights to the Videos in violation of 17 U.S.C. § 501 et seq. and award damages and monetary relief as follows:

a. finding that Defendant infringed Plaintiff's copyright interests in and to the Videos by copying and displaying portions of them without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for the infringement of Video #2 pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: November 25, 2026

SANDERS LAW GROUP

By: /s/ Craig Sanders
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 144668

*Attorneys for Plaintiff*